24CA2008 Peo v Martinez 07-02-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2008
City and County of Denver District Court No. 23CR15136
Honorable A. Bruce Jones, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Xavier J. Martinez,

Defendant-Appellant.

SENTENCE AFFIRMED

Division VII
Opinion by JUDGE SULLIVAN
Pawar and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Ruth Summers, Alternate Defense Counsel, Louisville, Colorado, for Defendant-Appellant

¶ 1    Defendant, Xavier J. Martinez, appeals his sentence of seventeen years in the custody of the Department of Corrections (DOC). We affirm.

## I.    Background

¶ 2    According to the affidavit of probable cause for arrest, the victim and his girlfriend were walking to a convenience store when one or both of them got into a verbal confrontation with one or more passengers in a nearby car. Martinez, who was in the backseat of the car, rolled down his window and fired multiple gunshots, striking the victim multiple times. Martinez was sixteen years old at the time.

¶ 3    Under the direct file statute, the prosecution charged Martinez in Denver District Court with, among other offenses, two counts of attempted first degree murder, one count of first degree assault, and two crime of violence counts. See § 19-2.5-801(1)(a), C.R.S. 2025.

¶ 4    Nine months later, Martinez entered into a plea agreement with the prosecution. Under the agreement, Martinez would plead guilty to first degree assault, and the remaining counts would be dismissed. The first degree assault conviction carried a potential

DOC sentence in the range of ten to thirty-two years. See § 18-3-202(2)(b), (c), C.R.S. 2025; § 18-1.3-401(1)(a)(V.5)(A), (8)(a)(I), (10)(a), (10)(b)(XII), C.R.S. 2025; § 18-1.3-406(1)(a), C.R.S. 2025. The parties stipulated to a sentencing range of fourteen to twenty years in the DOC. The district court accepted Martinez's guilty plea at the providency hearing.

¶ 5 Before sentencing, the probation department filed its presentence investigation report, and the defense filed reports by a forensic social worker regarding mitigation evidence and her interviews of staff members at the juvenile detention facility where Martinez was being held.

¶ 6 At sentencing, the court informed the parties that it had reviewed all the information submitted by both parties before sentencing. The court then heard from Martinez's mentor from a youth mentoring program, his uncle, his guardian ad litem, his counsel, the prosecutor (who read aloud a letter from the victim's mother), and Martinez himself (through a letter read aloud). The defense requested a DOC sentence of fourteen years, while the prosecution requested a DOC sentence of between eighteen and twenty years. After reading and hearing all this information, the

2

district court engaged in a somewhat lengthy discussion of its sentencing decision before sentencing Martinez to seventeen years in the DOC's custody.

## II.     Analysis

¶ 7     On appeal, Martinez contends that the district court failed to consider essential sentencing factors and based its sentencing decision on unsubstantiated information.

¶ 8     As an initial matter, we agree with the parties that Martinez can't appeal the propriety of his sentence because his seventeen-year sentence falls within the plea agreement's stipulated sentencing range of fourteen to twenty years.  *See* § 18-1-409(1), C.R.S. 2025 ("[I]f the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of the propriety of the sentence.").  So, we may not consider any arguments pertaining to "the intrinsic fairness or appropriateness of the sentence itself taking into account 'the nature of the offense, the character of the offender, and the public interest.'"  *Sullivan v. People*, 2020 CO 58, ¶ 13 (citation omitted); *see also People v. Garcia,* 55 P.3d 243, 244 (Colo. App. 2002) (an argument that the trial court abused its discretion by

emphasizing punishment to the exclusion of other sentencing objectives constituted a challenge to the propriety of the sentence).

¶ 9    But Martinez may seek review of "the manner in which the sentence was imposed," which involves those extrinsic factors and procedures that affect the determination of the sentence, "including the sufficiency and accuracy of the information on which it was based." § 18-1-409(1); *see Sullivan,* ¶¶ 11-26.  We will construe Martinez's arguments on appeal as a challenge to the manner in which the court imposed his sentence.

¶ 10    A district court enjoys broad discretion in imposing a sentence, and we won't overturn its decision absent a clear abuse of discretion.  *People v. Fuller*, 791 P.2d 702, 708 (Colo. 1990).

¶ 11    Before turning to Martinez's contentions, we disagree with the People's argument that we "can only consider [Martinez's] claim as an 'illegal manner' allegation" under Crim. P. 35(a).  This is a direct appeal, so section 18-1-409(1) controls, not Crim. P. 35(a).

¶ 12    Martinez first argues that although the district court at sentencing "noted factors it was required to consider and balance" under section 18-1-102.5, C.R.S. 2025, it "did not indicate that it considered all of them."  This argument is belied by the record.  The

district court's discussion of its reasoning for selecting a seventeen-year DOC sentence touched on all the factors in section 18-1-102.5, and the court also explicitly said, "I've taken all of these factors into account." Even if that weren't the case, the court wasn't required to make explicit findings on each of the statutory sentencing factors. *See Walton v. People*, 2019 CO 95, ¶ 17.

¶ 13    Martinez also argues that although "[t]he court expressly considered Mr. Martinez's age," "the record contains no evidence that the court considered Mr. Martinez's significant trauma history and resultant diagnosis of post-traumatic stress disorder." But recall, the court specifically noted at the beginning of the sentencing hearing that it had reviewed all the information submitted by both parties, including the forensic social worker's reports regarding mitigation evidence and her interviews of staff members at the juvenile detention facility where Martinez was being held. And during its sentencing decision, the court said that it had "listened very carefully" to the statements made by the four people who spoke on Martinez's behalf at sentencing. The mitigation evidence submitted before, and presented at, sentencing included information about Martinez's trauma history and post-traumatic

5

stress disorder. The court's statements that it had reviewed and listened carefully to all that mitigation evidence is sufficient to show that it considered Martinez's trauma history and post-traumatic stress disorder.

¶ 14 Martinez further argues that the district court improperly "relied on beliefs regarding the victim that were unsupported by the record." Specifically, he highlights the court's statement at sentencing that the victim "appears [to be] someone who was completely innocent" because the victim "appears to just be completely uninvolved and yet, he is shot." He argues that the victim wasn't "completely uninvolved" because the record indicates that (1) the victim later told law enforcement that his ex-girlfriend was one of the passengers in the car, and (2) the victim engaged in a verbal confrontation with passengers in the car before the shooting.

¶ 15 But the court also said at sentencing, "I can't even tell from this information I have whether this was an instance of shooting someone that the defendant thought was in a gang, or simply because of a beef between a former girlfriend and a current girlfriend." The court's own statement thus reveals that it

acknowledged the victim's "involvement" as it related to his girlfriend and a former girlfriend in the car. More importantly, though, the victim's prior relationship with one of the car's occupants and verbal confrontation with passengers in the car didn't justify being shot multiple times. Indeed, the court also said, "anyone who is shot under circumstances where they're unarmed and not threatening anyone is . . . innocent." In any event, nothing in the record suggests that the court's discussion of the victim being "uninvolved" influenced its decision to impose a seventeen-year sentence rather than some lesser sentence.

## III. Disposition

¶ 16 We affirm the sentence.

JUDGE PAWAR and JUDGE MEIRINK concur.